1   ROB BONTA, State Bar No. 202668
    Attorney General of California
2   R. MATTHEW WISE, State Bar No. 238485
    SETH E. GOLDSTEIN, State Bar No. 238228
3   Supervising Deputy Attorneys General
    KRISTEN C. A. KIDO, State Bar No. 335667
4   SHIWON CHOE, State Bar No. 320041
    AARON D. JONES, State Bar No. 248246
5   JAY C. RUSSELL, State Bar No. 122626
    Deputy Attorneys General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone:  (415) 510-3617
     Fax:  (415) 703-5480
8    E-mail:  Jay.Russell@doj.ca.gov
    *Attorneys for Plaintiff State of California*

9

IN THE UNITED STATES DISTRICT COURT

10

FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12

13

14   **STATE OF CALIFORNIA,**

15                                    Plaintiff,

16          v.                                    **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

17   **UNITED STATES DEPARTMENT OF TRANSPORTATION; SEAN DUFFY**, in his

18   official capacity as Secretary of Transportation; **THE FEDERAL MOTOR**

19   **CARRIER SAFETY ADMINISTRATION; DEREK BARRS**, in

20   his official capacity as Administrator of the Federal Motor Carrier Safety Administration,

21

22                                    Defendants.

23

24

25

26

27

28

**INTRODUCTION**

1.      The State of California brings this action for declaratory and injunctive relief
challenging the Federal Motor Carrier Safety Administration's decision to terminate more than
$33 million in federal grant funding for California's commercial vehicle safety programs.
FMCSA manages the Motor Carrier Safety Assistance Program (MCSAP), a federal formula
grant program that "provides financial assistance to States to reduce the number and severity of
crashes, and resulting injuries and fatalities, involving [commercial motor vehicles] and to
promote the safe transportation of passengers and hazardous materials."  49 C.F.R. § 350.201(a).
States that apply for MCSAP funding are "responsible for reviewing and analyzing State laws,
regulations, standards, and orders on CMV [commercial vehicle motor] safety to ensure
compatibility."  49 C.F.R. §350.303(a).  Among those regulations is one requiring commercial
drivers to "read and speak the English language sufficiently to converse with the general public,
to understand highway traffic signs and signals in the English language, to respond to official
inquiries, and to make entries on reports and records."  49 C.F.R. § 391.11(b)(2).

2.      California has adopted and enforces standards requiring commercial drivers to read
and speak English that are compatible with Federal Motor Carrier Safety Regulations.  California
requires, tests for, and determines that drivers have English language proficiency as a condition of
obtaining a commercial driver's license (CDL) or a commercial learner's permit (CLP).
California prohibits applicants who are unable to read or speak English sufficiently to pass the
required tests from obtaining these licenses.  FMCSA has accepted California Commercial
Vehicle Safety Plans detailing this process for many years without comment.

3.      On August 26, 2025, FMCSA sent California a preliminary notice alleging that
California had not enacted laws "compatible" with federal regulations and that California was out
of compliance with a purported federal requirement to place drivers out of service if they fail to
exhibit English language proficiency.  A true and correct copy of FMCSA's August 26, 2025
notice is attached as Exhibit A.

1

4.      On September 25, 2025, California responded, explaining that its laws, regulations, standards, and orders are either identical to or have the same effect as the federal safety requirements—including the English language proficiency requirement—and that California properly enforces this requirement through its commercial driver's licensure procedures. California further explained that few citations are written in the field because the State tests for and determines that drivers have English language proficiency *before* ever issuing a commercial driver's license.  A true and correct copy of California's September 25, 2025 correspondence responding to FMCSA's notice is attached as Exhibit B.

5.      FMCSA rejected this explanation.  Instead, on October 15, 2025, FMCSA issued a Notice of Final Determination of Nonconformity claiming that California was in violation of the English language proficiency requirements.  In that Notice, FMCSA asserted that California's extensive testing procedure and legal requirement that commercial driver's license applicants demonstrate English language proficiency were not compatible with federal requirements.  It claimed (without citing any legal authority) that California's obligation to enforce the federal regulation's English language proficiency requirements "does not cease after its issuance of a license"—in effect finding that California could not comply with federal law without performing roadside testing of English language proficiency.  FMCSA further alleged (without citing any evidence) that other States had issued violations to California commercial drivers for their lack English language proficiency.  In making these assertions, FMCSA determined that California's exemplary record of commercial vehicle safety—California had explained that commercial drivers holding a California license were involved in 39 percent fewer fatal commercial vehicle accidents than the national average—was "irrelevant."  A true and correct copy of FMCSA's October 15, 2025 Notice of Final Determination is attached as Exhibit C.

6.      In its Notice, FMCSA further advised California that its Commercial Vehicle Safety Plan (a pre-requisite to grant funding) would be retroactively rejected, as would all subsequent safety plans.  As a result, FMCSA advised California that any requests for reimbursement of California highway safety programs that had been funded through the Motor Carrier Safety

2

Assistance Program would be denied, and that all subsequent grant requests would also be rejected.  California estimates that FMCSA's actions will initially deprive it of millions of dollars in grant funding that was to be used to promote highway safety.  These losses will only increase if FMCSA's decision is allowed to stand.

7.     FMCSA's decision to terminate California's Motor Carrier Safety Assistance Program grant funding was arbitrary and capricious, an abuse of discretion, and contrary to law; imperils the safety of all persons driving in California; and threatens to wreak significant economic damage on the State and the Nation.

8.     For these reasons, and those discussed below, the Court should vacate and set aside Defendants' action terminating the grants and de-obligating the federal Motor Carrier Safety Assistance Program funding due to California. The Court also should enjoin Defendants from re-obligating and distributing these funds to any other recipient, or from otherwise transferring the funds.

**JURISDICTION, VENUE, AND INTRA-DISTRICT ASSIGNMENT**

9.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 2201. Jurisdiction is also proper under the judicial review provisions of the Administrative Procedure Act (APA), 5 U.S.C. §§ 702, 704, and the judicial review provision of the Motor Carrier Safety Assistance Program, 49 U.S.C. § 31102(k)(3).

10.     An actual, present, and justiciable controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a), and this Court has authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

11.     Venue is proper in this judicial district under 28 U.S.C. § 1391(e) because this is a civil action in which Defendants are agencies of the United States or officers of such an agency, no real property is involved in this action, and Plaintiff resides in this judicial district.

12.     Under Civil Local Rules 3-2(c) and 3-5(b), Plaintiff alleges that there is no basis for assignment of this action to any particular location or division of this Court.

3

**PARTIES**

13.    Plaintiff State of California brings this action as a sovereign state in the United States of America.  California has standing to bring this action because Defendants' wrongful conduct has resulted in the loss of grant funds intended to promote highway safety in California.

14.    Defendant United States Department of Transportation (DOT) is the federal agency to which Congress has appropriated the grant funds at issue in this case.

15.    Defendant Sean Duffy is the Secretary of Transportation, oversees the Department of Transportation, and is responsible for the actions and decisions challenged in this case. Defendant Duffy is sued in his official capacity.

16.    Defendant Federal Motor Carrier Safety Administration (FMCSA) was established within DOT under the Motor Carrier Safety Improvement Act of 1999.  FMCSA regulates the trucking industry in the United States, and states that its primary mission is to prevent commercial motor vehicle-related fatalities and injuries.

17.    Defendant Derek Barrs is the Administrator of FMCSA and is responsible for the actions and decisions challenged in this case. Defendant Barrs is sued in his official capacity.

**BACKGROUND**

I.    **Federal Programs and Regulations**

18.    FMCSA provides formula grants to states under the Motor Carrier Safety Assistance Program.  *See generally* Fed. Motor Carrier Safety Admin., Understanding U.S. Department of Transportation FMCSA Grants, https://www.fmcsa.dot.gov/grants.  The Assistance Program's purpose is "to improve commercial motor vehicle safety by . . . adopting and enforcing effective motor carrier, commercial motor vehicle, and driver safety regulations and practices consistent with Federal requirements."  49 U.S.C. § 31102(b).  To be eligible for assistance, states must adopt and enforce regulations and standards "compatible" with federal regulations, including the Federal Motor Carrier Safety regulations.  *See id*. § 31102(c)(1).

19.    The Secretary of Transportation is charged with promulgating regulations "specifying tolerance guidelines and standards for ensuring compatibility of intrastate commercial motor

4

vehicle safety laws, including regulations, with Federal motor carrier safety regulations to be enforced . . . .  To the extent practicable, the guidelines and standards *shall allow for maximum flexibility* while ensuring a degree of uniformity that will not diminish motor vehicle safety."  49 U.S.C. § 31102(e) (emphasis added).

20.    The Secretary's regulations applicable to commercial vehicle carriers are designed "to determine the safety and fitness of motor carriers, to assign safety ratings, to direct motor carriers to take remedial action when required, and to prohibit motor carriers receiving a safety rating of 'unsatisfactory' from operating" a commercial motor vehicle.  49 C.F.R. § 385.1(a).  Among the numerous regulations concerning "Qualifications of Drivers and Longer Combination Vehicle Driver Instructors" is the requirement that a commercial motor vehicle driver "[c]an read and speak the English language sufficiently to converse with the general public, to understand highway traffic signs and signals in the English language, to respond to official inquiries, and to make entries on reports and records."  49 C.F.R. § 391.11(b)(2).

21.    In addition, the Secretary has incorporated the Commercial Vehicle Safety Alliance's "North American Standard Out-of-Service Criteria and Level VI Inspection Procedures . . . [dated] April 1, 2024," which identify "critical vehicle inspection items and detail[] the criteria that can prohibit a motor carrier or driver from operating a commercial motor vehicle for a specified period of time or until the condition is corrected."  Com. Vehicle Safety Alliance, Out-of-Service Criteria, https://cvsa.org/inspections/out-of-service-criteria/.  49 C.F.R. § 385.4(b)(1).  When commercial drivers receive an Out-of-Service order, they may no longer operate a commercial vehicle until the violation is remedied.  The version of the North American Standard Out-of-Service Criteria incorporated in federal regulations does not provide that English language proficiency is cause for putting a driver out of service.[1]

---

[1] The Commercial Vehicle Safety Alliance issued an "emergency action letter" in June 2025 stating that its board has voted "to add non-compliance with Title 49 Code of Federal Regulations (CFR) 391.11(b)(2) to the CVSA North American Standard Out-of-Service Criteria, effective June 25."  Letter from Com. Vehicle Safety Alliance to Members (June 16, 2025), https://cvsa.org/wp-content/uploads/Emergency-Action-ELP-OOSC-6252025.pdf.  However, 49 C.F.R. § 385.4(b)(1) has not been amended since this correspondence issued.

5

22.    The California Highway Patrol (CHP) is the State law enforcement agency responsible for providing uniform traffic law enforcement throughout the State.  To qualify for Motor Carrier Safety Assistance Program funding, a state agency—here, the CHP—must, among other things, submit a Commercial Vehicle Safety Plan describing the state's "objectives, strategies, activities, and performance measures that cover a 3–year period, including the submission of the [Plan] for the first year and annual updates thereto for the second and third years."  49 C.F.R. §§ 350.207(a)(2), 350.105.  Under the regulations, this "Lead State Agency" is responsible for ensuring the state's laws and regulations are "compatible" with federal requirements.  *Id.*, § 350.303(a).  "Compatibility" is defined as "State laws, regulations, standards, and orders on [commercial motor vehicle] safety that . . . are identical to *or have the same effect as*" the Federal Motor Carrier Safety Regulations."  *Id*. § 350.105 (emphasis added).

23.    Anticipating changes in relevant federal requirements, federal regulations governing the Motor Carrier Safety Assistance Program provide a grace period of up to three years for states to adopt "compatible" laws, regulations, standards or orders reflecting new federal requirements. *See* 49 C.F.R. § 350.303(b) ("Compatibility deadline. As soon as practicable, but no later than 3 years after the effective date of any new addition or amendment to the [Federal Motor Carrier Safety Regulations] or [federal hazardous materials regulations], the State must amend its laws, regulations, standards, and orders to ensure compatibility").

## II.    California Laws and Regulations

24.    The CHP is the California Lead State Agency "responsible for administering" California's Commercial Vehicle State Plan.  See Cal. Com. Vehicle Safety Plan Fiscal Years 2024-2026 (approved Aug. 21, 2024).  Under this plan, the CHP:

- conducts classes to train various California law enforcement agencies on topics such as commercial registration, commercial driving under the influence (DUI), commercial driver license requirements, weight laws, size laws, permit loads, vehicle equipment requirements, loading regulations, hours-of-service, and vehicle lighting laws;

6

- maintains inspection facilities focused on vehicle inspections;

- deploys Mobile Road Enforcement officers whose duties include patrolling highways, enforcing CMV rules of the road, and conducting standardized inspections; and

- maintains data and reports on commercial vehicle accidents, including out-of-service reports, reports on roadside inspections, investigations, State safety data quality, safety audits, border enforcement, and Traffic Enforcement.

*See* Cal. Com. Vehicle Safety Plan Fiscal Years 2024-2026 (approved Aug. 21, 2024).

25.    The California Department of Motor Vehicles (DMV) is the State agency responsible for licensing drivers, registering vehicles, securing identities, and regulating the motor vehicle industry in pursuit of public safety.  Under California's Commercial Vehicle Safety Plan, the DMV is the State's Motor Carrier Safety Assistance Program Grant sub-recipient and shares enforcement responsibility with the CHP.  Cal. Com. Vehicle Safety Plan Annual Update FY 2025 (accepted Dec. 17, 2024) at 5 ("The California Department of Motor Vehicles administers the [Program's] requirement for registrants of [commercial motor vehicles] to demonstrate, at the time of registration, knowledge of the Federal Motor Carrier Safety Regulations.").

26.    DMV ensures that commercial driver's license applicants have the requisite English language proficiency though licensing procedures—specifically by requiring that all driving skills and road tests be conducted in English unaided.  Enforcing state and federal regulations through licensing procedures is expressly sanctioned by federal law.  *See, e.g.*, 9 C.F.R. § 391.15(b)(1) ("A driver is disqualified for the duration of the driver's loss of his/her privilege to operate a commercial motor vehicle on public highways, either temporarily or permanently, by reason of the revocation, suspension, withdrawal, or denial of an operator's license, permit, or privilege").

27.    Under California Vehicle Code section 15250 (a)(1), "[a] person shall not operate a commercial motor vehicle unless that person has in their immediate possession a valid commercial driver's license of the appropriate class."  In addition, "[a] person shall not be issued a commercial driver's license until passing a knowledge test and driving test for the operation of a

7

commercial motor vehicle that complies with the minimum federal standards established by the federal Commercial Motor Vehicle Safety Act of 1986 (Public Law 99-570) and Part 383 of Title 49 of the Code of Federal Regulations, and has satisfied all other requirements of that act as well as any other requirements imposed by this code." Cal. Veh. Code § 15250(b)(2)(A).

28.    Aside from this explicit incorporation of federal standards—which alone is sufficient to meet the "compatib[ility]" requirement—California law also includes an independent requirement of English language proficiency for commercial drivers. California law requires that before being issued a commercial license, an applicant is required to pass:

- "A test of the applicant's ability to read and understand simple English used in highway traffic and directional signs." Cal. Veh. Code § 12804.9(a)(1)(B); and

- "An actual demonstration of the applicant's ability to exercise ordinary and reasonable control in operating a motor vehicle by driving it under the supervision of an examining officer." *Id.*, subd. (D).

29.    Moreover, the entire commercial vehicle road test must be conducted in English. Cal. Com. Driver Handbook Section 1.1.2 ("All skills tests must be conducted in English. An interpreter is prohibited for the [California Driver's License] skills test."); *see also id.* at Section 13 – Road Test ("Interpreters are prohibited."). The driving exam is conducted in accordance with both State and federal regulations. Cal. Code Regs. tit. 13, § 26.03(a) ("Upon the effective date of the applicable federal regulations, a person must complete the entry level driver training prescribed in Parts 380, 383, and 384 of Title 49 of the Code of Federal Regulations before taking the skills test for a Class A or B commercial driver's license for the first time, a skills test for a passenger or school bus endorsement for the first time, or the knowledge test for a hazardous materials endorsement for the first time.").

30.    Ultimately, California law is unambiguous: "[The DMV] shall not issue a driver's license to, or renew a driver's license of, any person: . . . Who is unable to read and understand English used in highway traffic and directional signs." Cal. Veh. Code § 12805(a)(5). Thus, California incorporates and enforces an English language proficiency requirement that is

8

compatible with federal regulations by incorporating it into its testing and licensure procedures, and as required to qualify for MCSAP funding, has adopted laws and standards identical to, or having the same effect as, the federal English language requirement.

### III.    The Federal Motor Carrier Safety Administration's Notices and Grant Terminations

31.    On March 1, 2025, President Donald Trump issued an executive order "Designating English as the Official Language of the United States."  Exec. Order No. 14,224, 90 Fed. Reg. 11363 (Mar. 6, 2025).  On May 20, 2025, in response to this largely symbolic gesture, Defendant Duffy signed an order issuing new guidance, applicable to federal agencies, requiring that commercial motor vehicle drivers who fail to comply with FMCSA's English language proficiency requirements must be placed out of service.  *See* U.S. Dep't of Transp., Internal Agency Enforcement Policy (May 20, 2025), available at https://www.fmcsa.dot.gov/newsroom/ updated-internal-agency-enforcement-policy-english-language-proficiency.  Before this new policy memorandum was issued, federal law enforcement officials were not required to place a driver out of service if the driver was found to be lacking the requisite English language proficiency.  *Id.*

32.    On August 26, 2025, FMCSA served California with a Notice of Proposed Determination of Non-Conformity.  Ex. A.  In this notice, FMCSA alleged that "California [was] not performing in accordance with its approved Commercial Vehicle Safety Plan (CVSP) and [was] not adequately meeting the qualifying conditions for MCSAP participation."  To support that allegation, FMCSA asserted that California had "neither adopted a compatible law, regulation, standard, nor order to implement [the English language proficiency] requirement. Therefore, California has failed to comply with the MCSAP compatibility requirements that the State must and has certified in their required annual [safety plan]."  FMCSA further alleged that between June 25 and August 21, 2025, California placed one commercial driver out-of-service for a failure to exhibit English language proficiency.  FMCSA's Notice gave California 30 days in

Complaint for Declaratory and Injunctive Relief

which to respond.  FMCSA also implied that it could withhold $33 million in MCSAP funding that it had approved under California's 2025 Commercial Vehicle Safety Plan.

33.    California responded to this notice on September 25, 2025, advising FMCSA that it had in fact explicitly incorporated federal standards into its commercial licensing process, and that placing drivers out-of-service for failing to exhibit the requisite English language proficiency was not required by those standards.  Ex. B.  Further, the rarity of having to place a driver out of service for lack of English language proficiency made sense given California's comprehensive commercial licensing process, under which all commercial driver's license applicants are required to successfully complete all skills and road tests in English without aid or assistance, ensuring that anyone who lacks the requisite English language proficiency never obtains a license in the first place.

34.    The Administration's Notice also stated that its "data show that California is not enforcing the [English language proficiency] standard during roadside inspections and is failing to place out of service drivers who are not in compliance."  But there is no federal requirement that English language proficiency be established through "roadside inspections."  Indeed, the Federal Motor Carrier Safety Administration's guidelines on assessing English language proficiency do not obligate State Lead Agencies to conduct examinations or impose enforcement procedures during roadside inspections.  Instead, the policy is clearly directed to FMCSA's *own* employees and agents.  U.S. Dep't of Transp., Internal Agency Enforcement Policy, at 1 ("This policy memorandum provides guidance to Federal Motor Carrier Safety Administration enforcement personnel.").

35.    Thus, in California, the licensing process that confirms English language proficiency before a license is ever issued fully complies with federal requirements.  FMCSA acknowledged as much by approving California's Commercial Vehicle Safety Plan, which outlines California's licensing scheme, for many years up to and including 2025.

36.    On October 15, 2025, despite California's showing that its laws and regulations were "compatible with" federal laws and regulations, FMCSA issued its Notice of Final Determination

10

of Nonconformity.  Ex. C.  In that Notice, FMCSA asserted that California's obligation to enforce the federal regulation's English language proficiency requirements "does not cease after its issuance of a license."  In making that assertion, FMCSA determined that California's exemplary record of commercial vehicle safety was "irrelevant."  FMCSA further asserted (without reference to any data) that "other states" had cited California drivers for failing to exhibit English language proficiency, and that California was failing "to address the English proficiency of the thousands of interstate drivers licensed in other jurisdictions," thus implicitly imposing a duty on California to oversee other State's commercial licensing and enforcement procedures.

37.    In its Notice, FMCSA also immediately withdrew its prior approval of California's Fiscal Year 2024 (FY24) and Fiscal Year 2025 (FY25) Commercial Vehicle Safety Plans. FMCSA advised California that vouchers submitted for approval for expenses incurred after October 15, 2025, would be ineligible for MCSAP reimbursement from FY24 or FY25 grant funding.  In addition, FMCSA stated that it would now neither approve California's FY26 Commercial Vehicle Safety Plan nor award California any FY26 MCSAP funding.

38.    FMCSA's final decision to abruptly terminate California's MCSAP grants, rather than work with the State, was a sharp departure from ordinary agency practice over many years and, further, is inconsistent with DOT guidance.

39.    The federal government has adopted uniform remedies for DOT, FMCSA, and other agencies that administer federal grants. 2 C.F.R. § 1.105(c).  Under these regulations, when a grantee fails to comply with the terms and conditions of an award, the awarding agency "may implement specific conditions," 2 C.F.R. § 200.339, such as "[r]equiring additional project monitoring," requiring the recipient obtain technical or management assistance, and "[e]stablishing additional prior approvals."  2 C.F.R. § 200.208(c).  If the agency subsequently "determines that noncompliance cannot be remedied by imposing specific conditions," the agency may then take additional corrective actions, including, among other things, suspending or terminating the award "in part or in its entirety."  2 C.F.R. § 200.339(c).

40.      In 2016, DOT published a Financial Assistance Manual, applicable to FMCSA, which states that, after identifying a material violation of a grant or cooperative agreement and attempting resolution, DOT should work with "Senior Management" and specified others within the agency "to determine the appropriate course of action."  The Manual further states that if preliminary measures fail to bring a recipient into compliance, the recipient generally will not be terminated immediately; instead, it will be suspended and given an opportunity to take appropriate corrective action.  According to that Manual, "[i]f the deficiencies are not corrected during the suspension period, or when the deficiencies are so egregious that an end to the grant is the only appropriate option, the [agency] should determine whether to proceed with termination."

41.      In 2019, DOT published a Guide to Financial Assistance, effective January 1, 2020. It describes remedies when an agency determines that a grant recipient is not complying with the terms and conditions of a grant.  "In the event that recipients do not comply with Federal award requirements," it provides, "the [Operating Administration/Office of the Secretary] may consider the use of a remedial action(s) to protect the integrity of Federal funds.  A remedial action should be used only after other actions to improve a recipient's compliance or performance have not been successful, or the OA/OST determines that other actions are unlikely to improve compliance or performance."

42.      DOT practice, consistent with the DOT Manual and Guide and its regulations, had been—until the current Administration—to address grant compliance issues with escalating sanctions.  That process starts with providing assistance, and if such assistance does not resolve the problem, notifying the grant recipient of a need for corrective action.  Only if these measures are not successful, and the grantee fails to take corrective action, is the harsher remedy of grant suspension considered.  The draconian measure of grant termination had been appropriate only in the most egregious circumstances.

43.      None of these required steps happened here.  Neither the notice of proposed determination nor the final termination letter explains why FMCSA decided to depart from ordinary agency practice in terminating all of California's MCSAP grants without imposing lesser

12

1    sanctions first.  Nor did either notice explain why FMCSA terminated the grants without working

2    with California to address the alleged deficiencies in the State's Commercial Vehicle Safety

3    Plans.

4                                        **CLAIM FOR RELIEF**

5        44.    Plaintiff incorporates the allegations of the preceding paragraphs by reference.

6        45.    The Administrative Procedure Act (APA), 5 U.S.C. §§ 701-06, authorizes this Court

7    to set aside final agency action that is arbitrary, capricious, an abuse of discretion, or otherwise

8    not in accordance with law.

9        46.    Congress has expressly provided by statute that a State affected by an adverse

10   determination or withholding of funds under the Motor Carrier Safety Assistance Program "may

11   seek judicial review under chapter 7 of title 5," i.e., the APA.  49 U.S.C. § 31102(k)(3); *accord*

12   49 C.F.R. § 350.231(e).

13       47.     FMCSA's October 15, 2025 decision to terminate California's MCSAP grants

14   constitutes final agency action under the APA.

15       48.    FMCSA's decision to terminate California's MCSAP grants is arbitrary and

16   capricious, contrary to its policies, procedures, and regulations, as well as its ordinary practices,

17   which provide a recipient three years to come into compliance with any change in law, and

18   otherwise require that FMCSA first work with a grantee to address any non-compliance, and if

19   that fails, proceed to issue a demand for corrective action, before it considers suspension—much

20   less termination—of a grant program.

21       49.    FMCSA failed to follow that course here.

22       50.    Moreover, FMCSA's termination letter failed to provide any explanation for

23   departing from its policies and ordinary practices.

24       51.    Defendants' rationale for terminating California's MCSAP grants is also inconsistent

25   with their prior actions, including but not limited to the fact that, before the almost 20 years

26   preceding the present change in presidential administrations, FMCSA had consistently

27   determined that California was complying with MCSAP grant requirements, including approval

28

                                                13

1  issued less than nine months ago.  That approval was warranted, as California's English language

2  proficiency requirements are compatible with federal law.

3      52.    California is informed and believes and thereupon alleges that Defendants'

4  termination decision was not based on an examination of the relevant data, and that Defendants

5  did not provide or articulate a satisfactory explanation for their action, including a rational

6  connection between the facts found and the choice made.

7      53.    The funds obligated to California under its approved Commercial Vehicle Safety

8  Plans are a specific res, i.e., identifiable grant funds.  Should Defendants be allowed to re-obligate

9  or transfer those funds to another grantee or project, this case may become moot, resulting in

10 irreparable harm to Plaintiffs and the State of California.

11     54.    Accordingly, the Court should set aside FMCSA's termination decision and

12 preliminarily and permanently enjoin Defendants from re-obligating or otherwise transferring the

13 funds to other activities, programs, or recipients.

**PRAYER FOR RELIEF**

15     WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor,

16 and grant the following relief:

17     1.    That the Court issue a judicial declaration that Defendants' October 15, 2025 decision

18 to terminate the FY24, FY25, FY26, and all subsequent Commercial Vehicle Safety Plans that

19 Plaintiff has submitted or will submit was arbitrary, capricious, an abuse of discretion, or

20 otherwise not in accordance with law;

21     2.    That the Court enter a judgment setting aside Defendants' termination decision;

22     3.    That the Court enter a preliminary injunction, followed by a permanent injunction,

23 enjoining Defendants from re-obligating the grant funds to another grantee or otherwise

24 transferring the funds; and

25     4.    That the Court grant such other relief as the Court may deem just and proper.

14

Complaint for Declaratory and Injunctive Relief

Dated:  December 12, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
R. MATTHEW WISE
SETH E. GOLDSTEIN
Supervising Deputy Attorneys General
KRISTEN C.A. KIDO
SHIWON CHOE
AARON D. JONES
Deputy Attorneys General


_/s/ Jay C. Russell_
JAY C. RUSSELL
Deputy Attorney General
_Attorneys for Plaintiff State of California_

SA2025304807
44884804.docx

15

# Exhibit A



**U.S. Department
of Transportation**

**Federal Motor Carrier
Safety Administration**

**1200 New Jersey Ave, SE
Washington, DC 20590**

Governor Gavin Newsom
1021 O Street, Suite 9000
Sacramento, CA 95814

**NOTICE OF PROPOSED DETERMINATION OF NONCONFORMITY**

Dear Governor Newsom,

The Federal Motor Carrier Safety Administration (FMCSA) hereby serves this Notice of Proposed Determination of Nonconformity pursuant to 49 U.S.C. § 31102 and 49 CFR § 350.231. This Notice proposes a finding of noncompliance with the Motor Carrier Safety Assistance Program (MCSAP) qualifying conditions and serves as formal notice of potential sanctions, as detailed below.

## A. Brief Summary

MCSAP is a Federal formula grant program that "provides financial assistance to States to reduce the number and severity of crashes, and resulting injuries and fatalities, involving [commercial motor vehicles] and to promote the safe transportation of passengers and hazardous materials." 49 CFR § 350.201(a). To remain eligible for MCSAP funding, a state must adopt and enforce laws, regulations, standards, and orders on commercial motor vehicle (CMV) safety that are compatible with the Federal Motor Carrier Safety Regulations (FMCSRs) in 49 CPR Parts 390, 391, 392, 393, 395, 396, and 397. *See* 49 CFR § 350.207(a)(2).

This Notice is issued under 49 CFR §§ 350.23l(a)(l)-{2} because FMCSA has determined that California is not performing in accordance with its approved Commercial Vehicle Safety Plan (CVSP) and is not adequately meeting the qualifying conditions for MCSAP participation.

Per regulation, the State has 30 days from the date of this notice to respond to FMCSA before the FMCSA Administrator may issue a final agency decision. *See* 49 CFR § 350.231(b). Any adverse final decision will result in the withholding of MCSAP funds as described in Section C below.

## B. Basis for Proposed Determination of Nonconformity

The FMCSRs require commercial drivers to "read and speak the English language sufficiently to converse with the general public, to understand highway traffic signs and signals in the English language, to respond to official inquiries, and to make entries on reports and records." 49 CFR § 391.1l(b)(2). A driver who fails to meet this standard is not qualified to operate a CMV in interstate commerce and should be placed out-of-service during roadside inspections.

49 CFR § 350.303(a)-(c) requires MCSAP-participating states to adopt and enforce compatible laws on CMV safety, including the English language proficiency (ELP) standard. "Compatible"

laws are defined in 49 CFR § 350.105 as State laws, regulations standards and orders on CMV safety that "are identical to or have the same effect as the FMCSRs." FMCSA has determined that California has neither adopted a compatible law, regulation, standard, nor order to implement this Federal ELP requirement. Therefore, California has failed to comply with the MCSAP compatibility requirements that the state must and has certified in their required annual MCSAPCVSP.

Under 49 CFR § 350.207(a)(2), States must enforce the ELP requirement in 49 CFR § 391.1l(b)(2) to remain eligible for MCSAP funding. Enforcement of this requirement includes administering ELP tests and placing drivers who fail ELP tests out of service. It also includes putting drivers who are already under an out of service order from a previous inspection out of service. FMCSA data show that California is not enforcing the ELP standard during roadside inspections and is failing to place out of service drivers who are not in compliance.

From June 25, 2025, through August 21, 2025, FMCSA identified that out of 69,268 inspections conducted by California State inspectors, 34,069 resulted in at least one violation being issued. Of those 34,069 inspections, only one contained a violation relating to ELP (391.11B2-S, 391.11B2-Q, 391.11B2-Z), with that one violation resulting in the driver being placed out of service as a result of the ELP violation.

In addition, at least 23 drivers who were placed out of service on or after June 25, 2025, due to an ELP violation, were subsequently inspected by a California State inspector who failed to cite the ELP violation and give full faith and credit to the previous inspection.

## C. Sanctions for Determination of Nonconformity

Pursuant to 49 CFR § 350.23l(d), ifFMCSA makes a final determination of nonconformity, the Agency may withhold up to 100% of the State's MCSAP funding.

*Note: In FY 2025, California received approximately $33 million in MCSAP funds.*

## D. How to Respond to This Notice

California has 30 days from the date of this Notice to respond, as specified in 49 CFR § 350.231(b). The response should be sent to me at the above address or by email to jesse.elison@dot.gov. Once FMCSA receives the State's reply, the Agency will review the response and the FMCSA Administrator will issue a final agency decision.

Failure to respond within 30 days of the date of this Notice will result in this Notice becoming the Administrator's final determination of nonconformity.

Please direct all questions regarding this Notice to Philip Thomas, Deputy Associate Administrator for Safety at philip.thomas@dot.gov.

Sincerely,

Jesse Elison
Chief Counsel
Federal Motor Carrier Safety Administration

# Exhibit B



<table>
<tr><td><strong>Gavin Newsom</strong><br>Governor<br><br><strong>Toks Omishakin</strong><br>Secretary</td><td>400 Capitol Mall, Suite 2340<br>Sacramento, CA 95814<br>916-323-5400<br>www.calsta.ca.gov</td></tr>
</table>

September 25, 2025

*Via Email jesse.elison@dot.gov and First-Class Mail*

Jesse Elison, Chief Counsel
U.S. Department of Transportation
Federal Motor Carrier Safety Administration
1200 New Jersey Avenue SE
Washington, DC 20590

RE:    <u>Response to August 26, 2025, Notice of Proposed Determination of
Nonconformity</u>

Mr. Elison:

This correspondence responds to the Federal Motor Carrier Safety
Administration's August 26, 2025, Notice of Proposed Determination of
Nonconformity. As discussed in detail below, the State of California is fully
compliant with Motor Carrier Safety Assistance Program requirements,
applicable federal regulations, and California's Commercial Vehicle Safety Plan
approved by the Federal Motor Carrier Safety Administration earlier this year.

### 1.    The Motor Carrier Safety Assistance Program Grant and Applicable Federal Regulations

The Federal Motor Carrier Safety Administration (FMCSA) provides formula
grants to states under the Federal Motor Carrier Safety Assistance Program. *See
generally* Fed. Motor Carrier Safety Admin., *Understanding U.S. Department of
Transportation FMCSA Grants*, https://www.fmcsa.dot.gov/grants. The
Program's purpose is "to improve commercial motor vehicle safety by . . .
adopting and enforcing effective motor carrier, commercial motor vehicle, and
driver safety regulations and practices consistent with Federal requirements." 49

U.S.C. § 31102(b). To be eligible for assistance, states must adopt and enforce regulations and standards "compatible" with federal regulations, including the Federal Motor Carrier Safety regulations. *See id.* § 31102(c)(1).

The Secretary of Transportation is charged with promulgating regulations "specifying tolerance guidelines and standards for ensuring compatibility of intrastate commercial motor vehicle safety laws, including regulations, with Federal motor carrier safety regulations to be enforced . . . To the extent practicable, the guidelines and standards *shall allow for maximum flexibility* while ensuring a degree of uniformity that will not diminish motor vehicle safety." 49 U.S.C. § 31102(e) (emphasis added).

The Secretary's regulations applicable to commercial vehicle carriers are designed "to determine the safety fitness of motor carriers, to assign safety ratings, to direct motor carriers to take remedial action when required, and to prohibit motor carriers receiving a safety rating of 'unsatisfactory' from operating" a commercial motor vehicle. 49 C.F.R. § 385.1(a). Among the numerous regulations concerning "Qualifications of Drivers and Longer Combination Vehicle Driver Instructors" is the requirement that a commercial motor vehicle driver "[c]an read and speak the English language sufficiently to converse with the general public, to understand highway traffic signs and signals in the English language, to respond to official inquiries, and to make entries on reports and records." 49 C.F.R. § 391.11(b)(2).

In addition, the Secretary has incorporated by reference the Commercial Vehicle Safety Alliance's "North American Standard Out-of-Service Criteria and Level VI Inspection Procedures . . . [dated] April 1, 2024" into the federal regulations. These criteria identify "critical vehicle inspection items and details the criteria that can prohibit a motor carrier or driver from operating a commercial motor vehicle for a specified period of time or until the condition is corrected." Com. Vehicle Safety Alliance, *Out-of-Service Criteria*, https://cvsa.org/inspections/out-of-service-criteria/; *see also* 49 C.F.R. § 385.4(b)(1). The Commercial Vehicle Safety Alliance issued an "emergency action letter" in June 2025 stating that its board has voted "to add non-compliance with Title 49 Code of Federal Regulations (CFR) 391.11(b)(2) to the CVSA North American Standard Out-of-Service Criteria, effective June 25."  As noted, 49 C.F.R. § 385.4(b)(1) expressly incorporates by reference the Commercial Vehicle Safety Alliance's materials dated April 1, 2024. The regulation has not been amended since August 21, 2024, and thus does not incorporate the June 16, 2025, emergency action letter.

To qualify for Motor Carrier Safety Assistance Program funding, a State Lead Agency (here, the California Highway Patrol) must, among other things,

submit a Commercial Vehicle Safety Plan describing the state's "objectives, strategies, activities, and performance measures that cover a 3–year period, including the submission of the [Plan] for the first year and annual updates thereto for the second and third years." 49 C.F.R. §§ 350.207(a)(2), 350.105. Under the regulations, a state's Lead State Agency is responsible for ensuring the state's laws and regulations are "compatible" with federal requirements. *Id.,* § 350.303(a). "Compatibility" is defined as "State laws, regulations, standards, and orders on [commercial motor vehicle] safety that . . . are identical to *or have the same effect as*" the Federal Motor Carrier Safety Regulations." *Id.* § 350.105 (emphasis added).

### 2.  California Is Complying with Federal Laws and Regulations

California's laws, regulations, standards, and orders are either identical to or have the same effect as the federal safety requirements—including the English language proficiency requirement.  California properly enforces this requirement through its commercial driver's licensure procedures.

Under California Vehicle Code section 15250 (a)(1), "[a] person shall not operate a commercial motor vehicle unless that person has in their immediate possession a valid commercial driver's license of the appropriate class." In addition, "[a] person shall not be issued a commercial driver's license until passing a knowledge test and driving test for the operation of a commercial motor vehicle that complies with the minimum federal standards established by the federal Commercial Motor Vehicle Safety Act of 1986 (Public Law 99-570) and Part 383 of Title 49 of the Code of Federal Regulations, and has satisfied all other requirements of that act as well as any other requirements imposed by this code." Cal. Veh. Code § 15250(b)(2)(A).

Aside from this explicit incorporation of federal standards—which alone is sufficient to meet the "compatib[ility]" requirement—California law also includes an independent requirement of English language proficiency for commercial drivers. In particular, before being issued a commercial license, California law requires an applicant to pass:

- "A test of the applicant's ability to read and understand simple English used in highway traffic and directional signs." Cal. Veh. Code § 12804.9(a)(1)(B); and
- "An actual demonstration of the applicant's ability to exercise ordinary and reasonable control in operating a motor vehicle by driving it under the supervision of an examining officer."  (*Id.*, subd. (D).)

Moreover, under California regulations, the entire commercial vehicle road test must be conducted in English.  Cal. Code Regs. Tit. 49 §§ 391.11(b)(2), 383.133(c)(5).  The California Commercial Driver Handbook is consistent with this rule.  *See* Cal. Com. Driver Handbook Section 1.1.2 ("*All skills tests must be conducted in English*.  An interpreter is prohibited for the [California Driver's License] skills test.") (emphasis added); *see also id*. at Section 13 - Road Test ("Interpreters are prohibited.").  The driving exam is conducted in accordance with both State and federal regulations.

Ultimately, California law is unambiguous: "[The DMV] shall not issue a driver's license to, or renew a driver's license of, any person: . . . Who is unable to read and understand English used in highway traffic and directional signs."  Cal. Veh. Code § 12805(a)(5).  Thus, California incorporates and enforces an English language proficiency requirement by incorporating it into its testing and licensure process.

Further, California has—as has the federal Department of Transportation—fully incorporated the Commercial Vehicle Safety Alliance's Out-of-Service Criteria into state law by reference.  Cal. Code Regs. Tit. 13, § 1239 ("This article incorporates by reference portions of the Commercial Vehicle Safety Alliance North American Standard Out-of-Service Criteria (rev. April 1, 2025), including Part I, Part II, Part III, Part IV, and Appendix.").

Thus, despite the FMCSA's assertion in its Notice that California "is not adequately meeting the qualifying conditions for [Motor Carrier Safety Assistance Program] participation," California has in fact adopted and is "enforcing compatible laws, regulations, standards, and orders" on commercial motor vehicle safety.  49 C.F.R. 350.207(a)(2).  California law—specifically, California Vehicle Code section 12804.9 and 12805 —prohibit a person who is unable "to read and understand simple English used in highway traffic and directional signs" from obtaining a commercial driver's license.  California tests for the required English language proficiency by conducting skills and road tests entirely in English, and without the assistance of an interpreter, before awarding new applicants a commercial driver's license.  And California has adopted the April 1, 2024 version of the Commercial Vehicle Safety Alliance's out-of-service

criteria in its entirety, consistent with the federal regulations. Cal. Code Regs. Tit. 13, § 1239.[1]  Accordingly, California's laws and regulations "are identical to or have the same effect as" applicable federal laws.

### 3.   California is Appropriately Implementing its Commercial Vehicle Safety Plan

The California Highway Patrol is the State Lead Agency "responsible for administering" California's Commercial Vehicle Safety Plan. *See* Cal. Com. Vehicle Safety Plan Fiscal Years 2024-2026 (approved by FMCSA Aug. 2, 2024). California's plan shows that its Department of Motor Vehicles is the State's Motor Carrier Safety Assistance Program Grant sub-recipient and shares enforcement responsibility with the California Highway Patrol, consistent with 49 C.F.R. § 350.207(a)(6).  See *id.* Annual Update FY 2025 (accepted Dec. 17, 2024) at 5 ("The California Department of Motor Vehicles administers the [Program's] requirement for registrants of [commercial motor vehicles] to demonstrate, at the time of registration, knowledge of the Federal Motor Carrier Safety Regulations.").

California's Department of Motor Vehicles determines that commercial driver's license holders have the requisite English language proficiency by testing applicants' knowledge of basic English and requiring that all driving skills and road tests be conducted in English unaided.  Enforcing state and federal regulations through licensing procedures is specifically sanctioned by federal law.  *See, e.g.*, 9 C.F.R. § 391.15(b)(1) ("A driver is disqualified for the duration of the driver's loss of his/her privilege to operate a commercial motor vehicle on public highways, either temporarily or permanently, by reason of the revocation, suspension, withdrawal, or denial of an operator's license, permit, or privilege").

---

[1] California Code of Regulations, Title 13, Section 1239 is typically updated on an annual basis in April, most recently in April 2025.  The same update will occur during the next annual review cycle and, absent unforeseen circumstances, will incorporate the latest version of the Commercial Vehicle Safety Alliance's out-of-service criteria.  This process is entirely consistent with federal law which, upon changes to federal requirements, provides states up to three years to adopt "compatible" laws, regulations, standards or orders reflecting new federal requirements. *See* 49 C.F.R. § 350.303(b) ("Compatibility deadline.  As soon as practicable, but no later than 3 years after the effective date of any new addition or amendment to the [Federal Motor Carrier Safety Regulations] or [federal hazardous materials regulations], the State must amend its laws, regulations, standards, and orders to ensure compatibility").

The FMCSA's Notice states that "[u]nder 49 C.F.R. §350.207(a)(2), States must enforce the [English language proficiency] requirement to remain eligible for [Program] funding.  Enforcement of this requirement includes administering [English language proficiency] tests and placing drivers who fail [them] out of service."  California does so through its comprehensive licensing process, which requires English language testing and mandates that all skills and road tests required to obtain a license are conducted in English without aid or assistance.

The FMCSA's Notice also states that "data show that California is not enforcing the [English language proficiency] standard during roadside inspections and is failing to place out of service drivers who are not in compliance."  But there is no federal requirement that English language proficiency be established through "roadside inspections."  49 C.F.R. § 391.11(b)(2) has not been amended to require roadside tests for English language proficiency.  And the FMCSA's guidelines on assessing English language proficiency do not obligate State Lead Agencies to conduct examinations or impose enforcement procedures during roadside inspections. *See* U.S. Dep't of Transp., *Internal Agency Enforcement Policy* (May 20, 2025), available at https://www.fmcsa.dot.gov/newsroom/updated-internal-agency-enforcement-policy-english-language-proficiency.  Instead, the policy is clearly directed to the Agency's own employees and agents. *See, e.g., id.* at 1 ("This policy memorandum provides guidance to Federal Motor Carrier Safety Administration enforcement personnel.").  Nonetheless, as noted above, we anticipate that the latest version of the Commercial Vehicle Safety Alliance's out-of-service criteria, including lack of English language proficiency as a basis for out-of-service status, will be incorporated in California regulations during the next annual review process.

Thus, in California, the licensing process that confirms English language proficiency *before* a license is issued fully complies with federal requirements.  As such, and in recognition of this compliance, California's Commercial Vehicle Safety Plan, which outlines California's licensing scheme, has been approved by FMCSA as compliant with federal laws and regulations for many years.  Further, FMCSA conducts annual performance reviews of the Motor Carrier Safety Assistance Program and has not identified California's enforcement of the English language proficiency requirement as non-compliant.

Further, California requests further information about the data cited in FMCSA's August 26, 2025 Notice. The California Highway Patrol's records do not support FMCSA's contention that "out of 69,268 inspections conducted by California State inspectors, 34,069 resulted in at least one violation being issued.

Of those 34,069 inspections, only one contained a violation relating to ELP[.]" Accordingly, we welcome clarification from FMCSA on this point.

Moreover, as FMCSA is surely aware, there is no existing process for state agencies to notify agencies in other states of out-of-service determinations. There is also a delay between when an out-of-service report is issued and when that information is available on federal databases for states to view. And once available, those reports do not flag English language proficiency violations for review during roadside stops. Thus, even if a California inspector interacted with a driver who had been cited for insufficient English language proficiency in another state, the inspector would have no practicable way to know about that state's prior determination. The allegation that California has failed to "give full faith and credit to the previous inspection" is unfounded.

Although California is fully compliant with federal regulations and other requirements governing the Motor Carrier Safety Assistance Program, we nonetheless are continuously exploring ways to improve operations and increase safety for all members of the traveling public. To that end, in addition to incorporating the latest version of the Commercial Vehicle Safety Alliance's out-of-service criteria in California regulations, California's Department of Motor Vehicles also plans to create a process for validating English language proficiency of drivers transferring a commercial license issued by another state to California and for re-assessing commercial drivers cited for lack of English language proficiency.

Finally, we observe that California's efforts to ensure safe operations by commercial driver's license holders are reflected in FMCSA and National Highway Traffic Safety Administration data. In 2023, the last year for which full data is available, California commercial driver's license holders were involved in fatal crashes at a rate 39.4% lower than the national average. By comparison, Texas commercial driver's license holders (the only state with more such license holders than California) were involved in fatal crashes at a rate almost 50% higher than California commercial license holders.[2]

---

[2] Fatal crash data is drawn from the National Highway Traffic Safety Administration's Fatality Analysis Reporting System (FARS, available at: https://cdan.dot.gov), and data regarding numbers of commercial driver's license holders by state of issuance is drawn from FMCSA (FMCSA, Analysis & Information Online, available at: https://ai.fmcsa.dot.gov).

9/25/2025
Page 8

### 4.    Conclusion

As shown above, California has complied and will continue to comply with applicable federal laws and regulations.  Accordingly, California has met the qualifying conditions for Motor Carrier Safety Assistance Program funding.

We would welcome further discussion of your Notice or the contents of this letter.  Should you have questions, or need any further information, please contact me and I can ensure you receive the information you need.  I can be reached at (916) 261-4102 or Alicia.Fowler@calsta.ca.gov.

Sincerely,

*Alicia Fowler*

Alicia Fowler
General Counsel
California State Transportation Agency

SA2025304807
44800842

# Exhibit C



**U.S. Department
of Transportation**

**Federal Motor Carrier
Safety Administration**

**1200 New Jersey Ave, SE
Washington, DC 20590**

October 15, 2025

<u>Via Electronic Mail and UPS</u>
The Honorable Gavin Newsom
Governor of California
1021 O Street, Suite 9000
Sacramento, CA 95814

<u>Via Electronic Mail and UPS</u>
Alicia Fowler, Esq.
General Counsel
California State Transportation Agency
400 Capitol Mall, Suite 2340
Sacramento, CA 95814

### NOTICE OF FINAL DETERMINATION OF NONCONFORMITY

Dear Governor Newsom and Ms. Fowler:

The Federal Motor Carrier Safety Administration (FMCSA) served the State of California a Notice of Proposed Determination of Nonconformity pursuant to 49 U.S.C. § 31102 and 49 CFR § 350.231 (Notice) on August 26, 2025. The Notice proposed a finding of noncompliance with the Motor Carrier Safety Assistance Program (MCSAP) qualifying conditions and served as formal notice of potential sanctions. FMCSA reviewed California's Response to the August 26, 2025, Notice of Proposed Determination of Nonconformity (Response). After considering California's Response, FMCSA has made a Final Determination of Nonconformity, finding that California is not performing in accordance with its approved Fiscal Year 2024 and Fiscal Year 2025 Commercial Vehicle Safety Plans (FY24 and FY25 CVSPs) and is not adequately meeting the qualifying conditions for MCSAP participation. Specifically, FMCSA has determined that California has not adopted a compatible law, regulation, standard, or order to implement the English language standard in 49 CFR § 391.11(b)(2) adequately. California has failed to comply with the MCSAP compatibility requirements that California has certified in its mandatory annual MCSAP CVSPs. Therefore, pursuant to 49 CFR § 350.231, FMCSA is withdrawing approval of California's FY24 and FY25 CVSPs effective October 15, 2025. Therefore, no expenses incurred after October 15, 2025, and vouchered for reimbursement from FY24 or FY25 MCSAP funding will be approved and paid.

To remain eligible for MCSAP funding, a State must adopt and enforce laws, regulations, standards, and orders on commercial motor vehicle (CMV) safety that are compatible with the Federal Motor Carrier Safety Regulations (FMCSRs) in 49 CFR parts 390, 391, 392, 393, 395, 396, and 397. 49 CFR § 350.207(a)(2). This includes requiring CMV drivers to "read and speak the English language sufficiently to converse with the general public, to understand highway

traffic signs and signals in the English language, to respond to official inquiries, and to make entries on reports and records." 49 CFR § 391.11(b)(2).

The English language proficiency standard in 49 CFR § 391.11(b)(2) is not a new requirement; it has been a core component CMV safety since 1970—prior to the existence of the MCSAP.[1] Thus, California's obligation to have a compatible law, regulation, standard, or order predates by decades the President's Executive Order 14286, "Enforcing Commonsense Rules of the Road for America's Truck Drivers"[2] and the Commercial Vehicle Safety Alliance's (CVSA) June 25, 2025 amendment of the North American Standard Out-of-Service Criteria to include 49 CFR § 391.11(b)(2) (English Language Proficiency (ELP)) as an out-of-service violation.[3]

As a MCSAP-participating State, California is required to adopt and enforce laws, regulations, standards, or orders compatible with the ELP requirement. 49 CFR § 350.303(a)–(c). FMCSA notified California that the enforcement of the ELP standard includes both administering ELP assessments and placing drivers who fail those assessments out of service. California's argument that its driver licensing laws, regulations, standards, and orders are identical to or have the same effect as the FMCSRs is inapposite to the obligation under MCSAP identified by FMSCA for several reasons. First, California conflates its responsibilities under the commercial driver's license (CDL) program with its responsibilities under MCSAP.[4] Compliance with the CDL testing standards in 49 CFR parts 383 and 384 is not part of the MCSAP program. 49 CFR §§ 350.105 (definition of "FMCSRs"), 350.207(a)(2). In addition, assuming *arguendo* that California's assurance that conducting CDL skills tests in English and requiring driver's license applicants to be able to read and understand highway traffic and directions signs is sufficient to ensure drivers' compliance with 49 CFR § 391.11(b)(2), as a MCSAP-participating State, California's obligation to enforce the ELP requirements in 49 CFR § 391.11(b)(2) does not cease after its issuance of a license. California's licensure procedures are demonstrably inadequate to enforce 49 CFR § 391.11(b)(2).[5] FMCSA data collected from June 25, 2025 to October 2, 2025 shows that 474 unique California-licensed drivers have been cited in other States for ELP violations. Moreover, California's reliance on its State driver licensing laws fails to address the English proficiency of the thousands of interstate drivers licensed in other jurisdictions who operate within California's borders each day. The ELP requirement is a continuing safety obligation, and its enforcement must be equally continuous.

---

[1] *See* Miscellaneous Amendments, 35 Fed. Reg. 6458, 6461 (Apr. 22, 1970).

[2] 90 Fed. Reg. 18759 (Apr. 28, 2025).

[3] California asserted that 49 CFR § 385.4(b)(1) expressly incorporates by reference the CVSA out-of-service criteria into the FMCSRs. This is incorrect. FMCSA has only incorporated by reference the CVSA out-of-service criteria for commercial highway vehicles transporting transuranics and highway route controlled quantities of radioactive materials. Accordingly, California's related arguments are misplaced and will not be addressed. *See* 49 CFR § 385.4(b).

[4] *Compare* 49 U.S.C. § 31102(c) (MCSAP responsibilities) *with* 49 U.S.C. §31311(a) (CDL program responsibilities).

[5] California argues that drivers holding a California-issued CDL were involved in fatal crashes at a rate 39.4% lower than the National average while drivers holding a Texas-issued CDL were involved in fatal crashes at a rate almost 50% higher than drivers holding a California-issued CDL. However, the issue is whether California is enforcing ELP violations, not what its fatal crash rate may be. Therefore, FMCSA finds that this argument is irrelevant.

California also argued that no Federal regulation explicitly requires that ELP be established through roadside inspections and that 49 CFR § 391.11(b)(2) has not been amended to impose such a requirement. The Response explained that California follows the April 2024 version of the CVSA's out-of-service criteria, which does not include non-compliance with 49 CFR § 391.11(b)(2) as an out-of-service criteria, and that the latest version will not be incorporated until the next annual review process in April 2026.

California's arguments are misplaced, and a delay until April 2026 is unacceptable. As noted previously, the ELP standard in 49 CFR § 391.11(b)(2) has not changed and the requirement is a continuing safety obligation. There is no basis for delayed enforcement of this core safety regulation. As a MCSAP-participating State, California is required to conduct inspections necessary to enforce compatible laws, regulations, standards, and orders on CMV safety. In this regard, it is well settled that the National MCSAP elements include "driver inspections," which occur at roadside, and that States are required to have adequate legal authority to perform those inspections. 49 CFR §§ 350.203, 350.207(a)(6). Yet, FMCSA data demonstrates that California is not fulfilling its obligation. From June 25, 2025 through August 21, 2025, California inspectors conducted 69,268 inspections, 34,069 of which resulted in at least one violation. Of those 34,069 inspections, only one contained a violation relating to ELP (391.11B2-S, 391.11B2-Q, 391.11B2-Z).[6]

Lastly, in FY24, during California's MCSAP National Program Review, the State reported that it adopted and enforced laws, regulations, standards, and orders that are compatible with the FMCSRs as a condition of continued MCSAP eligibility. In support of that statement, California provided FMCSA with a copy of the California Highway Patrol's (CHP) Commercial Enforcement Manual (Manual). However, the Manual states:

> Title 49, Code of Federal Regulations (CFR), Section 391.11, requires the operator of a CMV to be able to read and write the English language. This regulation is not adopted by California; therefore, this requirement shall not be enforced or appear on the CHP 407F, CHP 343A, or any enforcement document.[7]

The CHP Commercial Enforcement Manual shows that, for FY24, California failed to adopt and enforce State laws, regulations, standards, or orders compatible with the ELP requirement in § 391.11(b)(2). Since then, California has not provided, nor has FMCSA received, any information indicating that the Manual has been updated to require roadside enforcement of the ELP requirement in § 391.11(b)(2).

Although California asserts that it enforces compatible laws on the ELP requirement prior to issuing a commercial driver's license, as the above analysis establishes, its Response fails to adequately explain how the State ensures continued enforcement of that requirement after a

---

[6] In its Response, California stated that the CHP's records do not support the data FMCSA presented. However, FMCSA compiled this data on August 19, 2025, from the roadside inspection reports California submitted through the Motor Carrier Management Information System (MCMIS), as required under 49 CFR 350.207(a)(12). Further, FMCSA notes that California did not submit any additional data from CHP in its Response.

[7] *See* CHP Commercial Enforcement Manual at page 3-4.

license is issued. Further, the number of California-licensed drivers cited for violations of 49 CFR § 391.11(b)(2) demonstrates that reliance on the CDL skills test alone is insufficient to ensure compliance with the ELP standard prior to licensing. Accordingly, California's claimed adherence to the CDL skills testing requirement not only fails to establish adequate enforcement of 49 CFR § 391.11(b)(2), but also overlooks the obligation to ensure that all interstate drivers operating within California, regardless of where they are licensed, meet the ELP requirement. FMCSA has therefore determined that California has falsely certified in its annual CVSP submissions that it has adopted and is enforcing a compatible law, regulation, standard, or order necessary to implement the ELP requirement in § 391.11(b)(2). As a result, California is not in compliance with the MCSAP compatibility requirements.

Therefore, pursuant to 49 CFR § 350.231, FMCSA is withdrawing approval of California's FY24 and FY25 CVSPs effective October 15, 2025. As such, vouchers submitted for approval for expenses incurred after this date will be ineligible for MCSAP reimbursement from FY24 or FY25 grant funding. In addition, FMCSA will neither approve California's FY26 CVSP nor award the State any FY26 MCSAP funding. FMCSA will continue to withhold approval of the California's FY26 CVSP nor award FY26 MCSAP funding until California adopts and enforces a law, regulation, standard, or order that is compatible with the ELP requirement in 49 CFR § 391.11(b)(2).

FMCSA is deeply disappointed by California's delayed enforcement and obfuscation in addressing its clear non-compliance with a fundamental safety regulation. The State of California's inaction on a fundamental safety regulation disregards the shared responsibility between FMCSA and its State partners to uphold the uniform enforcement of the FMCSRs. Partnership with States through MCSAP funding is central to FMCSA's mission because it enables States to conduct critical roadside inspections, compliance reviews, and enforcement actions that prevent crashes and save lives. FMCSA depends on its State partners to apply these resources responsibly and in full alignment with Federal requirements. California's failure to do so undermines not only the safety of its own roadways but also the longstanding cooperative framework that underpins the National framework of advancing CMV safety.

While FMCSA regrets that withholding Federal funds has become necessary, the Agency remains committed to working with California officials and stands ready to restore funding as soon as California begins full enforcement and compliance with Federal safety requirements.

Please direct all questions regarding this Notice to Philip Thomas, Deputy Associate Administrator for Safety, at philip.thomas@dot.gov.

Sincerely,

Jesse Elison
Chief Counsel